**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| **v.** | ) | **No. 3:09-cr-00240-21** |
| | ) | **Judge Aleta A. Trauger** |
| **CHRISTOPHER MOODY** | ) | |

## MEMORANDUM AND ORDER

Before the court is defendant Christopher Moody's Motion for Imposition of a Reduced Sentence Pursuant to Section 404 of the First Step Act. (Doc. No. 3259.) The government has filed a Response. (Doc. No. 3302.) The defendant, through counsel, recently filed a Reply for the purpose of bringing to the court's attention a recent Sixth Circuit opinion dispositive of one of the issues contested by the parties. (Doc. No. 3389 (citing *United States v. Boulding*, 960 F.3d 774 (6th Cir. 2020)).) For the reasons set forth herein, the motion will be denied.

## I.       BACKGROUND

Moody was charged in December 2010, in a Sixth Superseding Indictment (not having been charged in the any of the previous instruments), with conspiring to possess with the intent to distribute five or more grams of a mixture containing a detectable amount of cocaine and crack cocaine and knowingly possessing with intent to distribute five or more grams of cocaine and crack cocaine within 1000 feet of a public housing development. (Doc. No. 295.) In the Eleventh (and final) Superseding Indictment, issued in November 2013, Moody was charged in seven "counts" with: using a place within 1000 feet of a school to manufacture or distribute "controlled substances," in violation of 21 U.S.C. §§ 841, 856, and 860 (Count 5 and 12); manufacturing and possessing a mixture containing a "detectable amount" of crack cocaine with intent to distribute, within 1000 feet of a school, in violation of 21 U.S.C. §§ 841 and 860 and 18 U.S.C. § 2 (Count

6); possessing a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c) (Count 7); conspiracy to possess with intent to distribute unspecified amounts of cocaine and crack cocaine, in violation of 21 U.S.C. § 841(a)(1), all in violation of 21 U.S.C. § 846 and 18 U.S.C. § 2 (Count 8); possession with intent to distribute unspecified amounts of cocaine and crack cocaine within 1000 feet of a public housing facility, in violation of 21 U.S.C. §§ 841 and 860 and 18 U.S.C. § 2 (Count 9); and being a previously convicted felon in possession of a firearm and ammunition, in violation of 18 U.S.C. §§ 922(g)(1) and 924 (Counts 10 and 11). (Doc. No. 2468.) The Criminal Cover Sheet pertaining to these charges indicated that Moody was subject to a mandatory term of life imprisonment on Counts 5, 6, 9, and 12, minimum terms of thirty years on Count 8 and ten years on Counts 10 and 11, and a mandatory minimum of five consecutive years on Count 7. (Doc. No. 2468-2.)

Following a jury trial in November 2013 before the Honorable William J. Haynes, Jr., retired, Moody was convicted on all seven counts. The Verdict Form, like the Eleventh Superseding Indictment, did not reference any quantities of the controlled substances involved. (Doc. No. 2504.)

The Probation Office prepared a Presentence Investigation Report ("PSR"), dated January 30, 2014, which expressly relied on the 2013 Guidelines Manual to determine the defendant's base offense level. (Doc. No. 2574, at 18.) The PSR grouped the drug-related offenses together, since the base offense level for these counts was "contingent on the amount of drugs involved." (*Id.* at 19.) Relying on the testimony and proof at trial, the PSR found that Counts 5, 6, and 7 involved 7,087.5 grams of crack, while Counts 8 and 9 involved 27.2 grams of crack and 8.2 grams of cocaine. (*Id.*) Using the marijuana equivalency for these totals (at least 10,000 kilograms but less than 30,000 kilograms), the PSR found a base offense level of 36. (*Id.*) With other applicable

enhancements, the defendant had a total offense level of 40. (*Id.* at 20.) He was also deemed to be a Career Offender within the meaning of U.S.S.G. § 4B1.1, based on prior felony convictions for crimes of violence and controlled substance offenses and to have a Criminal History Category of VI. (*Id.* at 21.) Because the defendant also had a conviction under 18 U.S.C. § 924(c) (Count 7), the PSR determined that the guideline range was determined by § 4B1.1(c)(2), which called for application of the greater of

> (A) the guideline range that results by adding the mandatory minimum consecutive penalty required by 18 U.S.C. § 924(c), which is 60 months, to the minimum and maximum of the otherwise applicable guideline range determined for the counts of conviction other than the 18 U.S.C. § 924(c) offense; and (B) the guideline range determined using the table at U.S.S.G. § 4B1.1(c)(3).

(PSR, Doc. No. 2574, at 21.)

The PSR compared these two options, finding that option (A) yielded a guideline range of 360 months to life, which, combined with the 60-month statutory mandatory minimum sentence on Count 7, led to a guideline range of 420 months to life; and option (B) yielded a guideline range of 360 months to life. (*Id.*)

The PSR performed a similar analysis of Counts 10 and 11, the felon-in-possession convictions. Based on the defendant's having at least three prior convictions for violent offenses or serious drug offenses, he also qualified as an Armed Career Criminal for purposes of both 18 U.S.C. § 924(e) and U.S.S.G. § 4B1.4. He had an offense level of 34, but, because the offense level for an Armed Career Criminal under § 4B1.4(b) is the higher of that level and "the offense level from Chapters Two and Three" (which was 40), his total offense level for these two offenses was also 40. (Doc. No. 2574 at 22.)

Aside from the guideline calculations, however, the PSR also found that (1) the defendant was subject to a statutory mandatory minimum life sentence on Counts 5, 6, 9, and 12 under 21

U.S.C. §§ 841(b)(1)(A), 851, and 860; Count 7 carried a five-year mandatory minimum consecutive sentence under 18 U.S.C. § 924(c)(1)(A)(i) and (c)(1)(D)(ii); Count 8 was subject to a 30-year maximum sentence; and Counts 10 and 11 were both subject to a statutory mandatory minimum term of 15 years under § 924(e)(1). (Doc. No. 2574, at 40.) Because the statutory life sentences exceeded the guideline term of 420 years to life, the guideline term also became life, pursuant to U.S.S.G. § 5G1.1(c)(2). (Doc. No. 2574, at 40–41.) Finally, the PSR noted that the applicable statutes called for a 10-year minimum term of supervised release on Counts 5, 6, 9, and 12. (*Id.* at 41.)

Judge Haynes sentenced Moody on February 14, 2014 to life imprisonment on Counts 5, 6, 9, and 12; 360 months on Counts 8, 10, and 11, to run concurrently with each other and with the life sentence; 60 months on count 7, to run consecutively to the life sentence; and ten years of supervised release. (Judgment, Doc. No. 2563.) At the sentencing hearing, Judge Haynes noted that the enhanced penalty on Counts 5, 6, 9, and 12 was due to the defendant's prior convictions. (Doc. No. 3247, at 19.) The judge did not reference drug quantities but, by inference at least, adopted the drug quantities stated in the PSR, which were based on the proof at trial.

The conviction and sentence were affirmed on direct review. *United States v. Moody*, 631 F. App'x 392 (6th Cir. 2015), *cert. denied*, *Moody v. United States*, 136 S. Ct. 1689 (April 18, 2016). Moody filed a timely motion for post-conviction relief. The court appointed counsel, who filed an amended motion. This court denied relief, *Moody v. United States*, No. 3:17-cv-00611, 2018 WL 6591425 (M.D. Tenn. Dec. 13, 2018), and the Sixth Circuit denied a certificate of appealability and dismissed the appeal, 958 F.3d 485 (6th Cir. 2020).

Moody's original, *pro se* Motion for Reduction of Sentence, Pursuant to 18 U.S.C. § 3582(c)(2) and the First Step Act of 2018 was docketed in the civil post-conviction case, Doc. No. 3:17-cv-00611

(Doc. No. 47). The court appointed counsel, who properly filed the motion now before this court in the criminal case.

## II.    THE FIRST STEP ACT

Section 2 of the Fair Sentencing Act of 2010 ("FSA"), enacted on August 3, 2010, amended 21 U.S.C. § 841 by increasing the amount of cocaine base (crack) required to trigger mandatory minimum sentences. Pub. L. 111-220 (Aug. 3, 2010). Following the enactment of the FSA, it takes 280 grams of cocaine base (rather than 50 grams) to trigger the mandatory minimum penalties described in § 841(b)(1)(A), and 28 grams of crack (rather than 5) to trigger the mandatory minimum penalties set out in 21 U.S.C. § 841(b)(1)(B). In addition, the penalties set forth in § 851(b)(1)(C) now apply to offenses involving 0 to 28 grams of crack instead of 0 to 5 grams of crack. While the FSA did not apply retroactively to defendants who were sentenced before the statute was enacted, it did apply to defendants who, like Moody, committed offenses prior to the effective date but were sentenced after the effective date of the FSA. *See Dorsey v. United States*, 567 U.S. 260, 281 (2012) (holding that "the Fair Sentencing Act's new, lower mandatory minimums . . . apply to the post-Act sentencing of pre-Act offenders"); *see also United States v. Blewett*, 746 F.3d 647, 650 (6th Cir. 2013) (citing *Dorsey* as holding that "the Fair Sentencing Act applies to all individuals sentenced after its effective date").

The First Step Act of 2018 ("the 2018 Act") was signed into law on December 21, 2018. Pub. L. 115-391 (Dec. 21, 2018). Section 404 of the 2018 Act allows district courts to apply the FSA retroactively, such that the court "may" impose a reduced sentence as if section 2 of the FSA had been in effect at the time a "covered offense" was committed. First Step Act § 404(b). The term "covered offense" refers to "a violation of a Federal criminal statute, the statutory penalties for which were modified by section 2 or 3 of the [FSA] that was committed before August 3, 2010." *Id.* § 404(a). A district court, however, is not "require[d] . . . to reduce any sentence"

pursuant to section 404(b). First Step Act § 404(c); *see also id.* § 404(b) (instructing that a court "may . . . impose a reduced sentence" (emphasis added)).

## III. THE DEFENDANT'S MOTION

Moody's trial took place in 2013 and he was sentenced in 2014. The Supreme Court's decision in *Dorsey*, issued in 2012, had left no doubt that the Fair Sentencing Act's provisions applied to him, because he was sentenced after its August 3, 2010 effective date, and the Sentencing Guidelines had been amended by late 2011 to incorporate the changes wrought by the FSA. The PSR expressly noted that it relied on the 2013 Guidelines Manual to determine the defendant's offense level (Doc. No. 2574, at 18), but it did not actually specify which version of the U.S. Code it considered, and apparently neither party raised this issue before Judge Haynes. It nonetheless seems that the probation office and the parties all presumed that the version of 21 U.S.C. § 841 in effect prior to the Fair Sentencing Act applied.

In his motion, the defendant concedes that the government proved at trial that, in 2008, Moody made and sold about seven kilograms of crack cocaine at a house within 1000 feet of an elementary school, "thereby proving Counts 5 and 6." (Doc. No. 3259, at 2.) Regarding Counts 8 and 9, the defendant notes that the record demonstrated that Moody conspired with others between April and September 2009 to "possess with intent to distribute cocaine base." (*Id.*) The government proved that it raided Moody's home on February 11, 2011 and gathered proof that the defendant was using the house to make and sell crack cocaine. The jury convicted Moody on all of those counts, as well as the firearm counts, but without specifying what drug was involved in Counts 5 or 12. It found that crack was involved in Count 6 and that both crack and powder cocaine were involved in Counts 8 and 9. (*Id.* (citing Verdict, Doc. No. 2504).)[1]

---

[1] Both parties dance around, without actually acknowledging, the fact that neither the operative Indictment nor the Verdict Form references *any* particular quantity of the controlled

The defendant now points out that no mention was made of the Fair Sentencing Act during his sentencing, perhaps because it had been "enacted after most of Moody's misconduct but before his trial and sentencing." (Doc. No. 3259, at 3.) He argues that he is eligible for a sentencing reduction under the First Step Act, at least with respect to his sentence on Count 8, because the crack cocaine offense is a "covered offense" (a drug offense involving crack cocaine) that was "committed before August 3, 2010" and for which Section 2 of the Fair Sentencing Act modified the statutory penalties. (Doc. No. 3259, at 4.) The defendant asserts that Section 404 "aims to let courts reduce the sentence of any prisoner convicted and sentenced for a crack-cocaine offense without the benefit of the FSA." (*Id.*) He argues that the penalty was "subsequently modified" because, "when he committed the crime the applicable penalty of 0 to 30 years applied to a quantity of 0 to 5 [or more] grams of crack, whereas under the FSA the applicable penalty of 0 to 30 years applies to a quantity of 0 to 28 grams of crack." (Doc. No. 3259 at 4–5.) Although he does not state as much, the defendant's argument appears to be based upon the PSR's finding that Count 8 (conspiracy to possess with intent to distribute) involved 27.2 grams of cocaine base and 8.2 grams of cocaine. (Doc. No. 2574, at 19.) The defendant asserts, in sum, that "proving eligibility under the First Step Act is relatively simple. A defendant is eligible if he was convicted of a crack-cocaine offense, was sentenced under the pre-FSA statutory penalties, and continues to serve a

---

substances at issue, despite the fact that, by the time the defendant was sentenced in 2014, the Supreme Court's holding in *Apprendi v. New Jersey*, 530 U.S. 466 (2000), was old news. Following *Apprendi*, the Sixth Circuit had specifically held that, for drug convictions under 21 U.S.C. § 841, the quantity and type of drugs attributable to a defendant must be submitted to the jury for a determination beyond a reasonable doubt. *United States v. Page*, 232 F.3d 536, 542 (6th Cir. 2000). That, however, did not happen in this case, and apparently no objection was ever raised regarding that failure—possibly because whatever error involved was harmless in light of the evidence introduced at trial as to the staggering quantities of crack cocaine involved. Whatever the reason, the defendant implicitly recognizes that any argument regarding the government's obligation to prove beyond a reasonable doubt drug quantities that increased the sentencing floor has, at this juncture, been waived.

sentence that has not already been reduced to give effect to the FSA." (*Id.* at 6.) He argues that he satisfies each of these requirements, as a result of which the court has the authority to "impose a reduced sentence" under § 404(b) of the First Step Act.

The defendant goes on then to argue that, finding him eligible, the court should reduce his sentence. He argues that the statute authorizes a court to hold a hearing "to fully address any relevant consideration to imposing a new sentence that comports with the sentencing factors of § 3553(a)." (*Id.* at 6.) He argues that this would include a reduction in his sentence on Counts 5, 6, 9, and 12, which now, instead of a mandatory life sentence, carry a mandatory minimum of 25 years and up to life: "Under current law, the Court could impose sentences of 25 years on all counts, except for the § 924(c) count, which would require a consecutive sentence of 5 years." (Doc. No. 3259, at 7.)

In its Response, the government argues that the defendant is not entitled to relief under the First Step Act, since he was sentenced after the Fair Sentencing Act went into effect. It also argues that the defendant was sentenced based on Judge Haynes' finding, at sentencing, that his drug offenses involved "25 times more than the 280 grams of crack" that justified a life sentence under 21 U.S.C. § 841(b)(1)(A) after passage of the Fair Sentencing Act and that the same penalties, therefore, would have applied before and after the Fair Sentencing Act went into effect. The government misconstrues the defendant's motion as arguing that he is eligible for relief "because the indictment did not specify the amount of crack involved in the defendant's offenses." (Doc. No. 3302, at 6.)

The government then devotes almost fourteen pages of its brief to arguing that the definition of a "covered offense" in § 404(a) of the First Step Act should be construed as "ground[ing] the eligibility inquiry in the actual conduct involved in the defendant's violation,

rather than the statute under which the defendant was convicted." (Doc. No. 3302, at 8.) That is, Section 404(a) states that "the term 'covered offense' means a violation of a Federal criminal statute, the statutory penalties for which were modified by section 2 or 3 of the Fair Sentencing Act of 2010 . . . , that was committed before August 3, 2010." FSA § 404(a). The government argues that the phrase "the statutory penalties for which were modified" refers, not to "a Federal criminal statute," but to "a violation" (of a statute). And, on that basis, it claims that the defendant is not be eligible for relief, because, although the statute under which he was convicted was modified by the First Step Act, his particular "violation" of that statute, which involved more than 7,000 grams of crack, means that the penalty tied to his conviction was not modified by the Fair Sentencing Act.

That particular argument has been firmly foreclosed by the Sixth Circuit's recent determination that eligibility under the First Step Act "turns on the statute of conviction as opposed to a defendant's specific conduct." *United States v. Boulding*, 960 F.3d 774, 775 (6th Cir. 2020); *see id.* ("Because the Act's definition of a 'covered offense' ties eligibility to the statute of conviction, we . . . hold that eligibility for resentencing under the First Step Act is a categorical inquiry governed by the statute of conviction.").

In a supplemental memorandum filed after *Boulding* was issued, the defendant posits that the government "implicitly concede[s] that Moody was not 'prosecuted . . . under the Fair Sentencing Act" and continues to argue that Moody is entitled to relief on Count 8, as this count was impacted by the Fair Sentencing Act. He then argues that Counts 5, 6, and 9 are covered offenses as well and that the imposition of concurrent life sentences for the convictions on these counts was partially premised on the violations of § 841(a) and the pre-Fair Sentencing Act trafficking of cocaine. But, he further argues, even if just one offense qualifies as a covered offense,

the court is authorized to reduce non-crack counts of conviction that "were treated as part of the same sentencing package." (Doc. No. 3389 (collecting cases).)

The problem with the defendant's argument is the fact that the Fair Sentencing Act had been in effect for almost four years by the time the defendant was sentenced, and there was no ambiguity remaining at that time regarding its applicability to a defendant who committed the charged crimes before, but was sentenced after, it went into effect. Although the First Step Act, on its face, appears to apply to defendants who committed their offenses prior to August 3, 2010, irrespective of when they were sentenced, the court nonetheless finds that this defendant had the opportunity to raise a Fair Sentencing Act claim at sentencing, on appeal, and in his post-conviction motion. He did not do so. Any claim that he should have been sentenced under the mandatory minimums that went into effect with the passage of the Fair Sentencing Act in 2010 has long since been waived. The court finds as a matter of law that the defendant is not eligible for relief under the First Step Act, because the 2018 Act did not have the effect of changing the penalties that were in effect at the time he was sentenced in 2014.

## IV.  CONCLUSION AND ORDER

The defendant's motion is **DENIED**.

It is so **ORDERED**.

ALETA A. TRAUGER
United States District Judge